**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>DOUGLAS BLANCHETTE,<br><br>        Debtor<br><br>DOUGLAS BLANCHETTE,<br><br>        Plaintiff<br><br>v.<br><br>JANIS G. BLANCHETTE,<br><br>        Defendant | Chapter 13<br>Case No. 16-14055-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 17-1025 |

**MEMORANDUM OF DECISION ON**
**MOTION BY DOUGLAS BLANCHETTE FOR JUDGMENT ON THE PLEADINGS**
**AND CR0SS-MOTION BY JANIS BLANCHETTE FOR SUMMARY JUDGMENT**

By his complaint in the above-captioned adversary proceeding, plaintiff and chapter 13 debtor Douglas Blanchette ("Douglas") asserts, in count I, an objection to a proof of claim filed in his case by his mother, defendant Janis Blanchette ("Janis")—a nonpriority unsecured claim in the amount of $154,690.84—and, in Count II, a declaration that Janis has no life estate or other interest in certain real property that he owns. The adversary proceeding is before the Court on a motion by Douglas for judgment on the pleadings [Doc. #18], which, pursuant to Fed. R. Civ. P. 12(d), the court has converted to a motion for summary judgment, and on a cross-motion by Janis for summary judgment [Doc. #45].

**FACTS**

Except as otherwise indicated, the following facts are not controverted. At all relevant times, Douglas has owned and resided at 131 Spruce Street, Middleboro, Massachusetts (the

"Middleboro Property"). In or around May 2011, Janis contends, she paid for certain improvements to the Middleboro Property. On August 9, 2012, Janis filed a petition for relief under chapter 13 of the Bankruptcy Code. This Court confirmed Janis's first amended chapter 13 plan on May 31, 2013. Janis did not list any interest in the Middleboro Property or any claim against Douglas in the schedules, statements, or chapter 13 plan that she filed in her bankruptcy case.

On July 8, 2016, Janis brought a complaint against Douglas in the Massachusetts Land Court in which she sought recognition of a life estate interest in the Middleboro Property or, alternatively, the imposition of a constructive trust. Janis alleged that, in May 2011, she and Douglas had entered into a contract agreeing that Janis would finance improvements to the Middleboro Property in consideration for which Janis would receive what amounted to a life estate interest in a designated "in-law" apartment in a specific portion of the Middleboro Property, with the right to reside at the Middleboro Property and have sole possession of the in-law apartment. Douglas subsequently moved to dismiss the Land Court action, which motion the Land Court denied, stating that Janis had plead sufficient facts to state a plausible entitlement to the relief she sought. Douglas then moved for reconsideration of the Land Court's order denying the motion to dismiss on the basis that Janis was judicially estopped from bringing the Land Court action because she had not listed any interest in the Middleboro Property on her schedules and statements in her bankruptcy case. Janis responded that, having no title interest in the Middleboro Property, her failure to recognize and include her agreement with Douglas as an interest in real property on her bankruptcy schedules was a good faith, inadvertent omission. The Land Court denied Douglas's motion for reconsideration in August 2016, finding that, on the limited record before it, Janis was not estopped from bringing the Land Court action.

On October 24, 2016, Douglas filed his own petition under chapter 13 of the Bankruptcy Code, commencing the present bankruptcy case and staying the Land Court action. On March 6, 2017, Janis

2

timely filed a proof of claim in Douglas's bankruptcy case in the amount of $154,690.84 for money loaned. In a supplement to the proof of claim form, Janis stated that while her claim was presently unsecured, she believed that the Land Court action would ultimately determine the status of her claimed security interest in the Middleboro Property.

On February 17, 2017, Janis moved for entry of discharge in her own chapter 13 case, having completed all payments under her chapter 13 plan. The Court entered her discharge on March 20, 2017. To date, Janis has not amended her schedules to include any interest in the Middleboro Property or any cause of action against Douglas.

On March 22, 2017, Douglas filed the complaint commencing the present adversary proceeding. In it he objected to Janis's proof of claim and sought a declaratory judgment that Janis has no interest in the Middleboro Property. After Janis filed her answer, Douglas filed the instant motion for judgment on the pleadings, following which Janis filed her opposition and cross-motion for summary judgment.

**DISCUSSION**

   a. **Douglas's Motion**

      i. **Procedure**

Douglas's motion seeks judgment on the pleadings under Fed. R. Civ. P. 12(c), made applicable by Fed. R. Bankr. P. 12(b). At a preliminary hearing, it became clear that the motion was based in part on matters outside the pleadings, which matters the court did not exclude. Pursuant to Fed. R. Civ. P. 12(d), the Court declared that the matter would be treated as one for summary judgment under Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 56. The Court also established deadlines for each party, first Janis and then Douglas, to file any materials pertinent to the motion as one for summary judgment. Both did. Douglas submitted his materials as attachments to a new motion for summary judgment [Doc. #47]; the new motion added nothing to the Motion for Judgment on the Pleadings as converted to one

3

for summary judgment. The Court also afforded Janis an opportunity to file further materials in response to those submitted by Douglas, but she filed nothing further.

### ii. Positions of the Parties

Douglas argues that there are no material issues of fact to be resolved and that he is entitled to judgment as a matter of law. Specifically, Douglas argues that based on the pleadings and other documents of which the Court may take judicial notice, Janis is judicially estopped from asserting the existence of any interest in the Middleboro Property, and her claim must be disallowed in its entirety, all because she failed to disclose any such interest or any claim against Douglas in the schedules and statements in her own chapter 13 bankruptcy case. Douglas explains that despite being in bankruptcy for over five years, Janis never disclosed her purported interest in the Middleboro Property or her purported claim against Douglas. Douglas contends that in reliance on the disclosures Janis made in and omitted from her schedules and chapter 13 plan, the Court confirmed her chapter 13 plan and ultimately granted her a discharge. Further, Janis never rectified this omission, even after bringing the Land Court action asserting her purported interest in the Middleboro Property, thus demonstrating that her omission was willful. Accordingly, Douglas argues that Janis should be judicially estopped from asserting the existence of a life estate or a claim for damages, these being inconsistent with her prior position, upon which the Court relied in entering orders to Janis's benefit. Douglas also contends that the Land Court's determination that Janis was not judicially estopped from bringing the Land Court action was interlocutory and therefore of no preclusive effect in this proceeding.

Janis argues that the Land Court's ruling on judicial estoppel should be given preclusive effect here, but she also argues against application of judicial estoppel on the following substantive grounds. She argues that judicial estoppel is not appropriate because her failure to disclose either an interest in the Middleboro Property or a cause of action against Douglas was inadvertent and in good faith. Janis argues that judicial estoppel is not appropriate where the party's prior position was based on

inadvertence or mistake. She argues that a debtor's failure to disclose a cause of action might be deemed inadvertent where the debtor lacks knowledge of the factual basis of the undisclosed claim. Additionally, says Janis, application of judicial estoppel may be inappropriate when a debtor's failure to disclose occurred in the "absence of bad faith." Janis contends that she lacked "sufficient legal understanding" to recognize that the agreement with her son granting her a right to live in the in-law apartment for the rest of her life qualified as a legal "life estate" interest in the Middleboro Property. Janis contends that she did not list the relevant interest or claim in her schedules because she did not understand or appreciate the legal ramifications of the agreement with her son until the initiation of the Land Court action. Finally, Janis argues that she did notify the court and the parties in her bankruptcy case about her Land Court action. She says that her counsel served a motion for the approval of special counsel to work on the Land Court action, but she concedes that she never actually filed the motion to employ.

### iii.    Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and, on the uncontroverted facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994). Where, as here, the burden of proof at trial would fall on the party seeking summary judgment,[1] that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under Fed. R. Civ. P. 50(a) (in the current rules, a motion for judgment as a matter of law). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Provided it does so, the burden then shifts to the opposing party to adduce evidence that establishes a genuine issue of material fact as to at least one essential element of the moving party's case. The Court

---

[1] Douglas seeks summary judgment on the basis of judicial estoppel, an affirmative defense.

must view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988). The ultimate burden of proving the absence of a genuine issue of material fact remains at all times on the moving party. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010), quoting from *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. With respect to issues upon which there are cross-motions for summary judgment, each cross-motion must be decided on its own merits, though the court need not consider each in a vacuum. *See Puerto Rico American Ins. Co. v. Rivera-Vazquez*, 603 F.3d 125, 133 (1st Cir. 2010).

### iv.    Issue Preclusion

As an initial matter, I reject Janis's argument that the Land Court's order denying application of the doctrine of judicial estoppel should be afforded preclusive effect here. In Massachusetts, as elsewhere, a determination of fact or law in one proceeding will have preclusive effect in a later proceeding only if (among other things) the ruling in the former proceeding is embodied in a final order. It is undisputed that the Land Court action has not gone to final judgment. Accordingly, the Land Court's ruling on judicial estoppel is not entitled to preclusive effect. I therefore turn to the merits of the judicial estoppel defense.

### v.    The Doctrine of Judicial Estoppel

The determination of Douglas's motion requires application of the case of *Guay v. Burack*, 677 F.3d 10 (1st Cir. 2012). In *Guay*, the circuit court was asked to apply the doctrine of judicial estoppel where a debtor failed to amend his bankruptcy schedules to reveal the existence of litigation in which he alleged he was damaged post-petition by torts and statutory violations committed against him by the local police. If proven, the claims would have resulted in a money judgment that would have been an asset of the estate. After the debtor received a discharge in his chapter 7 case, the police moved to

6

dismiss the litigation, arguing that the debtor was judicially estopped from proceeding with those claims.

The circuit court identified two "generally agreed-upon conditions for the application of judicial estoppel": (i) "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive"; and (ii) "the responsible party must have succeeded in persuading a court to accept its prior position." *Id*. at 16.  The court also noted that there exists "a third oft-considered factor that asks 'whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Id*., citing *New Hampshire v. Maine*, 532 U.S. 742, 751, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).  About this factor, the circuit court stated that while unfair advantage, where it exists, "is a powerful factor in favor of applying the doctrine," *Guay,* 677 F.3d at 16-17, "we generally have not required" such a showing, *Guay,* 677 F.3d at 16, citing *Thore v. Howe*, 466 F.3d 173, 182 (1st Cir. 2006) (noting that this circuit has "rejected [benefit] as a prerequisite to application of the doctrine") and *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004) (noting that unfair advantage is "not a formal element of a claim of judicial estoppel"). *Guay*'s summary of the state of the law in the First Circuit thus leaves the doctrine with only the two above-enumerated requirements.  The court further made clear, as to the second requirement, that "[a] bankruptcy court 'accepts' a position taken in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as discharge, on the basis of those filings." *Guay,* 677 F.3d at 18.

The circuit court then turned to the status of the law regarding various equitable considerations that a party might invoke to escape judicial estoppel. It rejected two out of hand.  First, it is no defense that application of judicial estoppel may result in a windfall to the counterparty that invokes the doctrine. *Id*. at 19 ("We determined in *Payless* [*Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993)] that the integrity of the bankruptcy process is sufficiently important that we should not hesitate to apply judicial estoppel even where it creates a windfall for an

7

undeserving defendant."). Second, the court brushed away as insignificant the fact that the debtor stood to gain no unfair advantage on account of his failure to disclose the claims to the bankruptcy court. *Guay,* 677 F.3d at 18-19. Even where there is no unfair advantage, the court reasoned, the doctrine should be applied "to protect the integrity of the bankruptcy system." *Id*.

Regarding good faith as a defense, the court stated that a party "is not automatically excused from judicial estoppel if the earlier statement was made in good faith." Id. at 16, quoting from and citing *Thore v. Howe*, 466 F.3d 173, 184 n. 5 (1st Cir. 2006). The relevant note in *Thore* in turn refers for the same proposition to *Alternative System Concepts*. There, the Court explained more fully:

> We acknowledge that, in limited circumstances, courts have recognized a good faith exception to the operation of judicial estoppel. *See, e.g., Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993) (stating that a court may reject estoppel when "the position adopted in the first suit was clearly wrong yet had been advanced in good faith by the party now sought to be estopped"); 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4477, at 583–87 (2d ed. 2002) (collecting cases); cf. *InterGen*, 344 F.3d at 144 ("We would not want to institute a rule [of judicial estoppel] that unduly inhibits a plaintiff from appropriately adjusting its complaint either to correct errors or to accommodate facts learned during pretrial discovery."). For example, that exception may be available if the responsible party shows that the new, inconsistent position is the product of information neither known nor readily available to it at the time the initial position was taken.

*Alternative System Concepts*, 374 F.3d at 35. It would appear, then, that to some extent, proof of good faith would constitute a valid excuse from or exception to the estoppel. It is unclear what the court meant in *Guay* by stating that a party who had acted in good faith was "not automatically" excused. In *Guay* the circuit court expressly left open the extent to which good faith might be exculpatory:

> Some circuits have held that parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they "either lack[ed] knowledge of the undisclosed claims or ha [d] no motive for their concealment." Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir.2007); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir.2010) (same); Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 898 (6th Cir.2004) (same); Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 210 (5th Cir.1999) (same).

8

> This case does not present facts that require consideration of that exception, and we leave that question open.

*Guay,* 677 F.3d at 20.

### vi. Are the Requirements Satisfied?

Judicial estoppel requires satisfaction of the two requirements identified above. First, the estopping position (taken in the earlier litigation) and the estopped position (taken in the present litigation) must be directly inconsistent. Here, the uncontroverted facts establish that they are. In the previous litigation, Janis's bankruptcy case, she filed under oath schedules of real property and personal property. On her schedule of real property, she disclosed no interest of any nature in the Middleboro property. And on her schedule of personal property, again she disclosed neither an interest in the Middleboro property nor a contractual right to occupy that property as her residence for any length of time, nor contractual rights against her son of any nature. The schedule of personal property required that she disclose, at item 21, "other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," and, at item 35, "other personal property of any kind not already listed." Together, Janis's representations in these schedules amount to a representation that she has no interest in, and no right to an interest in or possession of, the Middleboro property of any portion of it.

In the present bankruptcy case, Janis has taken a diametrically opposed position in two matters. First, she has filed a proof of claim for $154,690.84 and, in supporting documents filed with the proof of claim, has asserted that the claim is based on a 2011 contract between herself and the Douglas under which Douglas is obligated to provide her with, in essence, either a life estate in the Middleboro Property of a life-time right to occupy a portion of that property as her residence. Second, in this adversary proceeding, in opposition to Douglas's count for a declaration that she has no interest in the Middleboro Property, she takes the position that she does have an interest in the property, the interest

9

being that which Douglas is contractually obligated to give her under the same 2011 contract.  The requirement of inconsistent positions is thus satisfied.

Douglas asserts that Janis made a second inconsistent statement in her own case by later failing to file amendments to her schedule or personal property and her statement of financial affairs to disclose (in the schedule of personal property) the existence of the causes of action that she asserted against him in state Superior Court and (in her statement of financial affairs) the pendency of that litigation. However, an omission amounts to a misrepresentation only when there exists an obligation to make an affirmative representation such that silence or omission itself amounts to a representation. Here Douglas has cited no rule that would have obligated Janis to make these amendments, and therefore these alleged misstatements cannot form a basis for summary judgment.

The second requirement is that the responsible party must have succeeded in persuading a court to accept its prior position.  In a bankruptcy case, where the original position consisted of a statement as to whether the debtor had or did not have particular assets at the time of the bankruptcy filing, that requirement is construed loosely and is satisfied if the court grants any relief in bankruptcy in reliance, in part, on the record created by the debtor's schedules.  Here, it is uncontroverted that the Court did grant Janis relief:  it confirmed her amended chapter 13 plan and then, upon her completion of plan payments, granted her a discharge. When the Court granted this relief, it did so in general reliance on the accuracy of the representations in the Janis's schedules as to the extent of her assets. This is enough, even though—as for purposes of Douglas's motion for summary judgment I must assume—the plan proposed to and did pay all claims in their full allowed amounts. The Court holds that on the uncontroverted facts, Janis succeeded in persuading a court to accept its prior positon, as that requirement is construed for purposes of judicial estoppel. I therefore conclude that the requirements of judicial estoppel are satisfied.

### vii.  Genuine Issue of Material Fact as to Good Faith?

Janis argues that summary judgment is nonetheless not appropriate because good faith is a defense and she has demonstrated the existence of a genuine issue of material fact as to its existence here.  Specifically, she contends that she omitted her rights to the Middleboro property and contractual claim against Douglas from her schedules (i) without knowledge that she had a life estate to the Middleboro Property and (ii) without motive to deceive, as her plan required payment to creditors in full.

In *Guay* the First Circuit left open the question of whether a debtor who has failed to disclose a claim may escape the application of judicial estoppel if she either lacked knowledge of the undisclosed claim or had no motive for concealing it.  *Guay*, 677 F.3d at 20. These defenses, if they exist at all, are the burden of the debtor to prove.  Where she opposes summary judgment on the strength of a defense as to which she carries the burden of proof, Janis must adduce, in support her defense, evidence on which a reasonable finder of fact may find that she has established each element of it.  For the following reasons, I conclude that on the uncontroverted facts, and even if these aspects of good faith are valid defenses in this circuit, Janis has not adduced evidence on which the court could reasonably find that she is entitled to such a defense.

First, Janis alleges that she filed her schedules in good faith and without knowledge of the claims and property interest she now seeks to assert against Douglas. In support of this proposition, she has submitted no evidence whatsoever; she does not address the subject in her filed affidavit. Even the recitation of the operative fact in her memorandum of law is wholly conclusory: "Defendant, via the assistance of her then-counsel related to said bankruptcy petition, filed her schedule of assets in good faith and with full disclosure of her assets as known to her at the time." Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. #45, at p. 5. Even if she did not understand herself to have title of any sort to the real estate, she offers no explanation as to why, in the alternative,

she did not list her contractual right of occupancy on her schedule of personal property. She does not contend that she lacked knowledge of the facts that gave rise to the rights she now seeks to vindicate. By her own averments, she knew these to be a valuable rights; indeed she attempted on three separate occasions to get Douglas to reduce them to writing. On this record, no reasonable finder of fact could find that she has adduced evidence on which lack of knowledge is established.

Second, Janis's contention that she filed her initial schedules without motive to conceal assets is also unsupported. At first blush, this argument has appeal. Had she revealed the claims against Douglas, those claims would have remained with Janis because her confirmed plan proposed to pay creditors in full, and, as the plan required, she did in fact pay all claims in full. But even this argument misses the point of the doctrine of judicial estoppel. In *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269 (11th Cir. 2010), a chapter 13 debtor argued that the court should not have applied judicial estoppel because she had paid off her debts in full. *Id*. at 1276. The court rejected that argument, saying "[the debtor] has the benefit of making this argument in hindsight. When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure." *Id*. As in *Robinson*, Janis indeed fully paid her creditors, but there was surely no guarantee that she would when she filled out her schedules. Indeed, the docket in her case shows that the plan that was confirmed was an amended plan and that she filed an earlier plan that was denied confirmation. Janis has adduced no evidence as to its proposed treatment of creditors. On this record, Janis has failed to adduce evidence on which a reasonable finder of fact could find that she had established lack of motive to deceive.

Janis also argues that she should be credited with giving notice of the Land Court action because her counsel served (but did not file) a motion to employ counsel for purposes of the Land Court action. This argument is to no avail. First, this action came years after her amended plan was confirmed. It creates no issue of material fact as to whether, in her schedules, she made (by omission) representations that are directly contrary to those she now makes in her proof of claim and in

opposition to Douglas's present complaint. Nor does it create a genuine issue of material fact as to lack of motive at the beginning of the case, when she filed her schedules and then obtained confirmation of her amended plan without disclosure. Also, in *Guay*, the court rejected a similar argument, namely that the debtor's mention of the unrevealed action at the meeting of creditors was not a substitute for providing formal notice. *Id*. at 20, citing *Jeffrey v. Desmond*, 70 F.3d 183, 186-87 (1st Cir. 1995).

For these reasons, I conclude that Janis has not established a genuine issue of material fact as to the good faith defense she raises.

### viii.    Conclusion as to Douglas's Motion

It being uncontroverted that the necessary elements of judicial estoppel are established and that Janis has failed to adduce evidence on which a defense of lack of knowledge or lack of motive might be based, I conclude that Douglas is entitled to judgment as a matter of law. A separate judgment will enter accordingly. I need not address Janis's cross-motion.

The doctrine of judicial estoppel is tough and sometimes painful for a court to apply. That is true in this case. The Court does not miss that the outcome here results in a windfall in favor of a son who may well have accepted his mother's retirement money to build out his house only to later disregard her generosity and put her out. But the integrity of the bankruptcy system depends on debtors' forthright disclosures.

Date: January 2, 2018

_____
Frank J. Bailey
United States Bankruptcy Judge

13